UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA             :

      - v. -                       :     **INFORMATION**

MAY SALEHI,                          :     21 Cr.

          Defendant.             :

- - - - - - - - - - - - - - - - - - X

**COUNT ONE**

**(Conspiracy to Commit Honest Services Wire Fraud)**

The United States Attorney charges:

<u>Background and Relevant Individuals and Entities</u>

1. At all times relevant to this Information, Montage, Inc. ("Montage") is a U.S.-based business incorporated in 1986, which is primarily involved in worldwide Government construction projects, including embassies, military posts, consulates, and similar overseas properties owned and operated by the United States Government. Montage operates out of two corporate headquarters in the Washington, D.C. area.

2. At all times relevant to this Information, Montage's owner is Sina Moayedi ("Moayedi").

3. From 1991 until mid-2021, MAY SALEHI, the defendant, was a State Department employee. For many years, SALEHI worked as an engineer in the State Department's Overseas Building Operations

division ("OBO"), which directs the worldwide overseas building program for the State Department and the U.S. Government community serving abroad.

Background on the State Department Bidding Process

4. To prevent corruption, the State Department's bidding process for construction projects is divided into a technical component and a cost component, which are separate. With respect to the technical component, the State Department uses a Technical Evaluation Panel (the "TEP"), which is essentially a panel of experts that reviews bids and evaluates the technical aspects of these proposals. For instance, the TEP evaluates (1) whether a bidder has the necessary qualifications and experience, and (2) whether the technical aspects of each bid meet the State Department's needs for a given construction project (e.g., structural and security needs).

5. There is also a separate "cost" phase. In a sealed bidding process, the Government generally, although not always, designates the lowest qualified bidder as the winning bid.

Background on the Bermuda Project

6. In or about 2016, the State Department solicited bids for a multi-million-dollar construction project known as a compound security upgrade ("CSU") to be performed at the United States Consulate in Hamilton, Bermuda (the "Bermuda Project").

7. The specific bidding process involved the submission of blind, sealed bids from various potential bidders. Montage was among several companies that submitted a sealed bid for the Bermuda Project.

8. In her role at OBO, MAY SALEHI, the defendant, was involved in the Bermuda Project in several respects. Among other things, SALEHI requested that funding be disbursed for the Bermuda Project; SALEHI served as the Chair of the pre-bid conference, which was attended by representatives of Montage and other construction companies; and SALEHI served as the Contracting Officer's Representative. In addition, SALEHI served as the Chair of the TEP for the Bermuda Project.

9. In the case of the Bermuda Project, the TEP disqualified one bidder, but determined that the remaining five bids were technically acceptable. Montage had submitted one of these five "technically acceptable" bids.

10. In or around September 2016, the State Department's employees evaluating cost (as distinct from the technical component) determined that all five remaining bids were within "the competitive range" but were below the Independent Government Estimate, which is an internal State Department estimate regarding the cost of the project. Accordingly, the State Department gave these five bidders the opportunity to re-bid, if they wished,

though they were not required to do so. Montage, for instance, had only about two days to decide whether to submit a re-bid.

The Scheme to Provide Confidential Information to Moayedi

11.  During that two-day window, Sina Moayedi contacted MAY SALEHI, the defendant, by phone, to seek confidential inside bidding information, which SALEHI supplied. SALEHI knew that the information that she provided Moayedi was confidential, and that it was unlawful to provide this information to prospective bidders such as Montage.

12.  After Moayedi received the inside information from MAY SALEHI, the defendant, Montage immediately increased its bid by approximately $917,820. In its revised submission to the State Department, Moayedi and Montage lied as to the reason it had increased its bid by nearly $1 million, falsely claiming that it had discovered "an arithmetic error in our estimate worksheets."

13.  Montage was ultimately awarded the Bermuda Project with a revised bid of $6.3 million. Among the qualified bidders who were not awarded the contract was a construction company that is headquartered in the Southern District of New York.

14.  In return for the confidential bidding information that he received from MAY SALEHI, the defendant, Moayedi made a kickback payment of $60,000 to SALEHI. Moayedi's kickback payment to SALEHI was broken out into three separate $20,000 installments, which were paid on different dates in late 2016 and early 2017. In

connection with these kickback payment installments, Moayedi also used intermediaries, in an effort to obscure the link between him and SALEHI.

## STATUTORY ALLEGATIONS

15. From in or around September 2016, up to and including in or about March 2017, in the Southern District of New York and elsewhere, MAY SALEHI, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

16. It was a part and an object of the conspiracy that MAY SALEHI, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the State Department of its intangible right to the honest services of SALEHI, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, SALEHI agreed with others to deprive the State Department of her honest services by providing confidential inside bidding information regarding the Bermuda Project to -- and accepting lucrative kickback payments from -- one of the bidders for that project, thereby enabling that bidder to increase its bid

substantially, yet remain the lowest bidder, which involved the use of interstate and foreign wires, including telephone calls, text messages, and wire transfers, including wire transfers through the Southern District of New York.

## Overt Acts

17. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. On or about September 19, 2016, Sina Moayedi spoke by telephone with MAY SALEHI, the defendant, regarding the Bermuda Project, and at Moayedi's request, SALEHI provided Moayedi with confidential inside bidding information regarding the Bermuda Project.

    b. On or about September 21, 2016, Montage revised its original bid for the Bermuda Project upward by about $917,820. In a letter accompanying this revised bid, Moayedi falsely represented to the State Department that this revised bid was attributable to an arithmetic error, thereby concealing the fact that SALEHI had provided confidential inside bidding information.

    c. Although SALEHI was the TEP Chair for the Bermuda Project, she did not seek to disqualify Montage's bid given its misconduct in seeking confidential inside bidding information.

    d. In late 2016 and early 2017, after the Bermuda Project was awarded to Montage, Moayedi made a kickback payment of

$60,000 to SALEHI, in three separate $20,000 installments, using intermediaries to obscure the link between him and SALEHI. In connection with these payments, SALEHI had multiple phone calls with one of the intermediaries.

      e.    To conceal the true purpose of the kickback payment, SALEHI gave one of the intermediaries a rug.

      f.    SALEHI did not report the $60,000 kickback payment on her State Department financial disclosure form.

(Title 18, United States Code, Section 371.)

## FORFEITURE ALLEGATION

18. As a result of committing the offense alleged in Count One of this Information, MAY SALEHI, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, a sum of money equal to $60,000 in United States currency, representing the amount of proceeds traceable to the commission of said offense.

### Substitute Asset Provision

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

   (Title 18, United States Code, Section 981;
   Title 21, United States Code, Section 853;
   Title 28, United States Code, Section 2461.)


          /s/
          AUDREY STRAUSS
          United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MAY SALEHI,

Defendant.

**INFORMATION**

21 Cr. _____

(18 U.S.C. § 371)

AUDREY STRAUSS
United States Attorney.

9/20/21
VT.

Deft. pres. with attorney _JONATHAN HALPERN_
AUSA _MICHAEL NEFF_ Court Reporter _PRESS_
Interpreter pres/(not pres) Deft. withdraws plea of not guilty & enters a plea
of guilty to count(s) ___1___ PSI Ordered. Sentence /CONTROL DATE _1/20/22_
Bail _150K BOND COSIGNED BY 1 FRP SURRENDER TRAVEL DOCS_ TRAVEL RESTRICTION TO
Mag. Judge _COTT_ recommends Judge _CASTEL_ DDC, EDVA, D. MD,
accept the guilty plea. D. DEL, EDPA, DNJ,
SDNY, EDNY.
DEFT. WAIVES INDICTMENT AND PLEAS NOT GUILTY
COTT, USMJ